FILED
5/17/2023 4:52 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Gay Lane DEPUTY

Case 3:23-cv-01197-K-BN    Document 1-2    Filed 05/24/23    Page 1 of 10    PageID 35

## CASE NO. DC22-09391

| | | |
|---|---|---|
| H5R, LLC, | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | **191st JUDICIAL DISTRICT** |
| **Scottsdale Insurance Company, a/k/a** | § | |
| **Nationwide Insurance,** | § | |
| **Defendant.** | § | **DALLAS COUNTY, TEXAS** |

### PLAINTIFF'S AMENDED PETITION

COME NOW Plaintiff H5R, LLC ("H5C" or "Plaintiff"), complaining of Defendant Scottsdale Insurance Company, a/k/a Nationwide Insurance ("Nationwide or "Defendant"), and for cause of action would respectfully show this Court as follows:

### I.  LEVEL 2 - RULE 190.3 DISCOVERY CONTROL PLAN

Plaintiff intends to conduct discovery under Level 2.

### II.  PARTIES

Plaintiff H5R, LLC is a Texas limited liability company and Dallas County, Texas resident and is properly before the Court.

Defendant Scottsdale Insurance Company, a/k/a Nationwide Insurance is a national insurance company that is properly before the Court.

### III.  VENUE AND JURISDICTION

The amount in controversy is within the jurisdictional limits of this Court.  This Court has jurisdiction over the Defendant because Defendant conducts business operations in Texas.

---

Venue is proper in Dallas County, Texas because Defendants' business operations are in Dallas County, the real property that is the subject of the insurance contract and that is the subject of this litigation involves real property located in Dallas County, and all or a substantial part of the causes of action arose in Dallas County.

## IV.  <u>FACTUAL BACKGROUND</u>

H5R is the owner of record of real property located at 2665 Farmers Branch Lane, Dallas, Dallas County, Texas 75234 (the "House"). The House is a one-family residence.

## A.    The Contract.

Nationwide is a national insurance company that enters into insurance contracts with its insureds. The insurance contracts detail Nationwide's promises to pay claims if certain covered causes of loss occur. H5R and Nationwide entered into an insurance contract on or about December 17, 2020 in the form of a renewal of policy #CPS32115869 (the "Contract"). In summary, the Contract promises payment for claims regarding for "Covered Causes of Loss" regarding the House.

More particularly, Notably, on Form CG 00 01 04 13, Section V. – Definitions ₱ 17 provides that "Property Damage" means "Physical injury to tangible property, including all resulting loss of use of that property." Further, on Form CP 00 10 10 12, Section A.3., which is titled Covered Causes of Loss, states "See applicable Causes Of Loss form as shown in the Declarations." In turn, the Common Policy Declarations states "See Schedule of Forms and Endorsements."

In turn, form CP 10 10 10 12, titled "Causes of Loss" states in Section A that is titled "Covered Causes of Loss" that certain "Covered Causes of Loss" means the following listed items "[w]hen Basic is shown in the Declarations." Section A.4. states that windstorm or hail are covered causes of losses, while excluded causes of loss include frost, cold weather, ice, snow and sleet.

In addition, on form UTS-230g-TX (9-94), Nationwide promises that it:

will, on or before the thirtieth (30th) day after receipt of notice of a claim:

1. Acknowledge receipt of the claim;
2. Commence any investigation of the claim; and
3. Request from the claimant all items, statements and forms.

The Company shall notify a claimant in writing of the acceptance or rejection of the claim no later than the fifteenth (15th) business day after the date the Company receives all items, statements and forms required by the Company in order to secure final proof of loss. If loss results from arson, the Company shall notify the claimant within thirty (30) days. If the Company is unable to accept or reject the claim within the time periods specified, the Company must notify the claimant and provide reasons why additional time is needed."

## B.    The Claim.

In the spring of 2021, water began penetrating the House, and it appeared the water was entering the House from or near its roof. H5R immediately notified Nationwide through its online portal and made a claim. Nationwide sent an independent adjuster, Mr. Watkins to the House. Following the inspection by Mr. Watkins, H5R called Nationwide asking about the status of the claim because Nationwide failed to respond to the claim following the inspection. H5R also texted with Mr. Watkins on April 20, 2021 to ask Mr. Watkins about

the status of the claim. See Exh. 1, Texts p. 1. Mr. Watkins stated that he was forwarding the information about the claim to Nationwide. See Exh. 1, Texts p. 1.

On April 27, 2021, H5R texted Mr. Watkins again and asked for the status of the claim. See Exh. 1, Texts p. 2. Mr. Watkins confirmed that he was the adjuster and stated that H5R would be contacted by someone else – a different adjuster – in 5 business days or less. See Exh. 1, Texts p. 2.

On May 2, H5R texted Mr. Watkins again and asked for the status of the claim. See Exh. 1, Texts p. 3. Based upon Nationwide's documents, it appears a Mr. Gregory Horne was "assigned" by Nationwide on May 4, 2021. See Exh. 2, June 17, 2022 Letter p. 6. Mr. Horne inspected the House on May 21, 2021.See Exh. 2, June 17, 2022 Letter pp. 5, 6.

Finally, on June 15, 2021 Mr. Watkins began scheduling another appointment to inspect the interior of the House. See Exh. 1, Texts p. 4. After the necessary permission from the tenant was obtained following the tenant's illness, Mr. Horne again inspected the House on July 29, 2021. See Exh. 1, Texts pp. 5-8; Exh. 2, June 17, 2022 Letter p. 6.

H5R and its attorney continued to ask Nationwide for the status of the claim during the remainder of 2021 and then in 2022. Finally, on June 17, 2022, which is more than a year after the claim was made to Nationwide by H5R, Nationwide sent a letter stating the claim was denied. Exh. 2, June 17, 2022 Letter. Nationwide attached some expense and time records to the letter, but none of the actual inspection reports and engineering reports that are described. Exh. 2, June 17, 2022 Letter.

Thus, Nationwide failed to pay the claim.

Second, Nationwide failed to, on or before the thirtieth (30th) day after receipt of notice of a claim:

    1. Acknowledge receipt of the claim;

    2. Commence any investigation of the claim; and

    3. Request from the claimant all items, statements and forms.

Next, Defendant failed to notify H5R in writing of the acceptance or rejection of the claim no later than the fifteenth (15th) business day after the date Defendant received all items, statements and forms required by the Company in order to secure final proof of loss. Additionally, if Nationwide asserts that it was unable to accept or reject the claim within the time periods specified, Nationwide failed to notify H5R and provide reasons why additional time is needed.

## V. <u>BREACH OF CONTRACT</u>

Plaintiff incorporates sections I through IV as if set forth herein. In summary, Nationwide failed to perform its contractual obligations described in the insurance contract. There was a contract between H5R and Defendant, H5R performed under the contract, Defendant materially defaulted by failing to perform its contractual promises, and Defendant's actions caused injury to H5R.

First, Nationwide failed to pay the claim.

Second Nationwide failed to, on or before the thirtieth (30th) day after receipt of notice of a claim:

    1. Acknowledge receipt of the claim;

2. Commence any investigation of the claim; and

3. Request from the claimant all items, statements and forms.

Next, Defendant failed to notify H5R in writing of the acceptance or rejection of the claim no later than the fifteenth (15th) business day after the date Defendant received all items, statements and forms required by the Company in order to secure final proof of loss. Additionally, if Nationwide asserts that it was unable to accept or reject the claim within the time periods specified, Nationwide failed to notify H5R and provide reasons why additional time is needed.

## VI. <u>BAD FAITH</u>

Plaintiff incorporates sections I through IV as if set forth herein. Defendant is liable for its bad faith, *i.e.*, breach of the duty of good faith and fair dealing. There was an insurance contract between H5R and Defendant which created a duty of good-faith and fair dealing, Defendant breached this duty when it denied or delayed payment when liability was reasonably clear, and Defendant's breach proximately caused H5R's injuries.

In the alternative, H5R would show that Defendant's actions are bad faith based upon extreme conduct independent of the policy claim. *See JAW the Pointe, LLC v. Lexington Ins.*, 460 S.W.3d 597, 602 (Tex. 2001); *Progressive Cty. Mut. Ins. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005).

## VII. <u>LATE PAYMENT OF INSURANCE CLAIM</u>

Plaintiff incorporates sections I through IV as if set forth herein. H5R had a claim as an insured under an insurance policy, H5R gave proper notice of its claim to Defendant,

Defendant is liable for the claim, and Defendant failed to acknowledge, investigate or request information about the claim, failed to accept, reject or extend the deadline for deciding the claim, or pay the claim.

## VIII. DECEPTIVE INSURANCE PRACTICES

Plaintiff incorporates sections I through IV as if set forth herein. H5R is an insured, Defendant is an insurance company, Defendant engaged in an act or practice that violated Texas Insurance Code chapter 541, subchapter R, Texas Business and Commerce Code section 17.48(b) and H5R relied upon the actor practice to the detriment of H5R, or a tie-in provision of the Texas Insurance Code, and Defendant's act or practice was a producing cause of actual damages.

In the alternative, H5R would show that Defendant's acts caused an independent injury in addition to the loss of policy benefits, including costs and damages caused by Defendant's delay and unreasonable investigation practice.

## IX. CONDITIONS PRECEDENT

Plaintiff incorporates Sections I through VIII above as if stated herein.  All conditions precedent have been performed or have occurred as required by rule 54 of the Texas Rules of Civil Procedure and Section 541.154 of the Texas insurance Code.

## X. ACTUAL DAMAGES AND STATUTORY DAMAGES

Plaintiff incorporates Sections I through VIII above as if stated herein.  Plaintiff seeks recovery of actual and statutory damages, including but not limited policy benefits, increased business costs, statutory damages under chapters 541 and 542 of the Texas Insurance Code,

and additional damages under the Texas Insurance Code and the Texas Deceptive Trade Practices act.

Plaintiff also incurred damages for lost rents of $3800 per month from May 2021 until judgment is entered. As an example, damages as of May 31, 2023 would be $3800 X 24 months = $91,200, plus an additional $3800 per month through trial and entry of judgment.

## XI. ADDITIONAL DAMAGES AND PUNITIVE DAMAGES

Plaintiff incorporates Sections I through VIII above as if stated herein. H5R seeks additional and punitive damages as authorized under Texas law.

Punitive damages are sought based upon Defendant's fraud, malice and gross negligence.

## XII. ATTORNEYS' FEES

H5R requests an award of H5R's attorneys' fees as authorized by Texas law, including but limited to chapter 38 of the Texas Civil Practice and Remedies Code, chapters 541, 542 and 542A of the Texas Insurance Code

## XIII. CLAIM FOR RELIEF

H5R seeks monetary relief of between $250,000 and $1 million, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs.

WHEREFORE, Plaintiff H5R, LLC respectfully prays that this Petition be received and filed and, upon final trial of this cause, Plaintiff have and recover from and against the Defendants, jointly and severally, all actual damages sustained, pre-judgment and post-

judgment interest at the highest rate permitted by law, all costs of court, and such further

relief, both at law and in equity, to which Plaintiff may show Plaintiff is justly entitled.

Respectfully submitted,

/s/ Jeffrey R. Sandberg
Jeffery R. Sandberg
Texas State Bar Number 00790051
Palmer Lehman Sandberg, PLLC, f/k/a
Palmer & Manuel, PLLC
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6454
Facsimile: (214) 265-1950
Email:  jsandberg@pamlaw.com
ATTORNEYS FOR PLAINTIFF
H5R, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the following counsel on this 17th day of May 2023:

**Via Efiling and Email:**
Patrick M. Kemp, Esq. (pkemp@smsm.com)
Segal McCambridge Singer & Mahoney, Ltd.
100 Congress Avenue, Suite 800
Austin, TX 78701

/s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Maria Islas on behalf of JEFFREY SANDBERG
Bar No. 00790051
mislas@pamlaw.com
Envelope ID: 75749065
Filing Code Description: Amended Petition
Filing Description:
Status as of 5/18/2023 8:51 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| JEFFREY RSANDBERG | | jsandberg@pamlaw.com | 5/17/2023 4:52:21 PM | SENT |
| Maria Islas | | mislas@pamlaw.com | 5/17/2023 4:52:21 PM | SENT |

Associated Case Party: SCOTTSDALE INSURANCE COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Patrick M.Kemp | | pkemp@smsm.com | 5/17/2023 4:52:21 PM | SENT |
| Robert G.Wall | | efinney@smsm.com | 5/17/2023 4:52:21 PM | SENT |
| C DanielDiLizia | | ddilizia@smsm.com | 5/17/2023 4:52:21 PM | SENT |